UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ELLEN J. LEDBETTER,<br>  Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>  Defendant. | )<br>)<br>)<br>)  5:11-CV-02768-LSC<br>)<br>)<br>)<br>) |

MEMORANDUM OF OPINION

I.   Introduction

The plaintiff, Ellen J. Ledbetter, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Ledbetter timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Ledbetter was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 28–29.) She has a GED, two years of college, and a technical diploma in clerical technology. (*Id.*) Her past work experiences include employment as a sales clerk, a sales associate, and a receptionist. (*Id.* at 173.) Ms.

Ledbetter claims that she became disabled on May 10, 2008, due to an amputation of her left arm at the elbow, syncope, nerve damage, depression, and migraines. (*Id.* at 155.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Ledbetter meets the insured status requirements of the Social Security Act through the date of his decision. (Tr. at 11.) He further determined that Ms. Ledbetter has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's history of surgical amputation of the left arm at the elbow due

to an automobile accident in 1997, obesity, hypoglycemia with occasional syncope due to blood sugar problems, depression, and anxiety are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.* at 12.) The ALJ did not find Ms. Ledbetter's allegations to be totally credible, and he determined that she has the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is unable to push, pull, or lift with her left arm; she should avoid climbing ladders, ropes, and scaffolds, and she is limited to only occasional crawling; she is unable to reach, handle, or finger objects with her left upper extremity; she should avoid concentrated exposure to extreme cold, vibrations, and/or hazardous conditions such as working at unprotected heights or around moving machinery. Additionally, the claimant is limited to no more than occasional interaction with supervisors, coworkers, and the general public due to psychological problems.

(*Id.* at 14.)

According to the ALJ, Ms. Ledbetter is capable of performing past relevant work as an accounting assistant, secretary, and data clerk. (*Id.* at 15.) Specifically, a vocational expert determined "that a hypothetical individual of the same age, education, work history and residual functional capacity as the claimant would be able

to perform the work related tasks for these past relevant jobs, all of which are sedentary exertional level work and semi-skilled." (*Id.*)  The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 10, 2008, through the date of this decision." (*Id.* at 16.)

II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion

Ms. Ledbetter alleges that the ALJ's decision should be reversed and remanded for three reasons. First, she believes that the ALJ's determination that she could perform past work was deficient. (Doc. 9 at 12–13.) Second, Plaintiff contends that the ALJ did not afford proper consideration to her subjective complaints of pain. (*Id.* at 13.) Third, she believes that the ALJ afforded too little weight to an opinion by Dr. Blanton, a psychologist. (*Id.* at 12.)

A.      Ms. Ledbetter's Capacity to Perform Past Work

Plaintiff first argues that the ALJ erred in determining that the plaintiff could perform her past relevant work. (*Id.*) In particular, Plaintiff takes issue with using the ALJ's RFC assessment and resulting vocational expert hypothetical as support for determining that the plaintiff could perform past, relevant work. (*Id.*)

Under S.S.R. 82-61, "a claimant can return to past relevant work if she can perform the specific job she performed, either in the manner she performed it, or as it is usually performed in the national economy." *Dudley v. Apfel*, 75 F. Supp. 2d 1381, 1382 (N.D. Ga. 1999). When an ALJ determines that a plaintiff has the ability to perform past relevant work, he or she must have three specific findings of fact. S.S.R. 82-62 (1982). First, there must be "[a] finding of fact as to the individual's RFC." *Id.* Second, there must be "[a] finding of fact as to the physical and mental demands of the past job/occupation." *Id.* Finally, there must be "[a] finding of fact that the individual's RFC would permit a return to his or her past job or occupation." *Id.* These findings must be supported by substantial evidence. *See Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009).

In this case, the ALJ established each of the three required findings of fact. First, the ALJ determined that the plaintiff had the RFC to perform light work. (Tr.

at 13.) Second, the ALJ determined that the past jobs "are sedentary exertional level work and semi-skilled" and that "these jobs do not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.* at 15.) Third, the ALJ found that "[i]n comparing the claimant's residual functional capacity [to perform light work] with the physical and mental demands [of plaintiff's past sedentary work] . . . the claimant is able to perform it as actually and generally performed." (*Id.*) Thus, the ALJ established the three required findings of fact.

Further, the ALJ had sufficient evidence in determining that the plaintiff could perform past, relevant work. The ALJ carefully considered and analyzed the entire record in formulating his opinion of Plaintiff's RFC. (*Id.* at 13–15.) In particular, because the ALJ was aware of the plaintiff's typing complaint and other alleged symptoms, the ALJ's RFC necessarily included an evaluation and credibility determination of those issues. (*Id.* at 66–70.) The ALJ then communicated the RFC verbatim to a vocational expert for her opinion. (*Id.* at 15.) The ALJ noted that the vocational expert "was particularly well qualified to give an opinion about the effect that a loss of a portion of an upper limb has on the claimant's occupational base as she herself has such impairment and has worked in vocational rehabilitation in the placement of similarly impaired individuals." (*Id.*) Finally, the ALJ noted that "[t]he vocational expert's testimony is consistent with the *Dictionary of Occupational Titles*."

(*Id.*)  Based on the RFC assessment, the vocational expert's testimony, and the *Dictionary of Occupational Titles*, the ALJ had sufficient evidence to find that the plaintiff could perform past relevant work.

    B.    Ms. Ledbetter's Allegations of Pain

Plaintiff next asserts that the ALJ's evaluation of her subjective complaints of pain was improper.  (Doc. 9 at 11–12.)  Specifically, she alleges that the ALJ erroneously rejected subjective complaints that "had a basis in medical fact from the record."  (*Id.* at 13.)

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.  *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* S.S.R. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotations omitted). In *Dyer,* the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of symptoms, and the types and dosages of medication, to conclude that the claimant's subjective complaints were inconsistent with the medical record. *Id*. at 1212.

In this case, the ALJ found that Ms. Ledbetter's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements are not credible to the extent they are inconsistent with

the . . . residual functional capacity assessment." (Tr. at 14.) The ALJ evaluated the claimant's subjective pain from migraines, hypoglycemia, and neuromas in her remaining limb. (*Id.*)

    1. Migraines and Hypoglycemia

The ALJ had explicit and adequate reasons for discrediting the plaintiff's subjective complaints of pain from migraines and hypoglycemia. The ALJ found that the plaintiff's migraines reportedly occurred only once per month during their peak. (Tr. at 14.) This conclusion is supported by the record, which shows complaints of monthly migraines in 2003, followed by reports of sporadic migraines in 2005. (*Id.* at 264, 268.) Also, the ALJ noted the plaintiff's failure to seek counseling from her neurologist for blood sugar-related syncope problems. (*Id.* at 14.) A nurse practitioner at Good Samaritan Clinic stated, "I find it interesting that [the plaintiff] has seen her neurologist, Dr. Chris Laganke, in March 2008, October 2008, and April 2009 and has not mentioned this problem to him." (*Id.* at 448.) The nurse practitioner further explained that she "was at a loss why [the plaintiff] would not discuss this complaint with her neurologist." (*Id.*) The ALJ's decision to discredit the plaintiff's subjective complaints of pain for syncope and migraines is supported by adequate and explicit reasons.

2. Neuromas in Plaintiff's Remaining Limb

The ALJ also had adequate and explicit reasons for discrediting Plaintiff's complaints of pain caused by her remaining limb. The ALJ noted that the plaintiff worked without assistance for many years following her amputation. (*Id.* at 15.) The ALJ considered Plaintiff's testimony that she was able to work as evidence that "her pain may not have as much affect [sic] on her ability to work as she alleges." (*Id.* at 14.) In a work history report prepared by the plaintiff, she indicated that she worked a number of jobs beginning in 1998—only a short time after her motor vehicle accident in 1997—and ending in April of 2009. (*Id.* at 173.) Also, the jobs after the plaintiff's May 10, 2008, onset date involved frequently lifting fifty pounds or more as a sales clerk at CVS, and lifting twenty-five pounds as a sales associate at Wal-Mart. (*Id.* at 174, 175.) Plaintiff was able to fulfill her duties without assistance and without incident at Wal-Mart for two months after she allegedly became unable to work. (*Id.* at 173.) The work activity in this case is significant because it shows that the plaintiff was not hindered by her alleged impairments during the work period, nor for a significant period thereafter. *See, e.g.*, *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Based on the ALJ's finding that the plaintiff was able to work, and based on the evidence in the record regarding the plaintiff's physical

duties at that employment, the ALJ had adequate and explicit reasons for rejecting plaintiff's subjective pain complaints from her remaining limb.

    C.    Dr. Blanton's Psychological Evaluation

Finally, the plaintiff argues that the ALJ erred by giving "short shrift" to an October 7, 2010, psychological evaluation, conducted by Dr. Blanton, that showed evidence of mental limitations. (*Id.* at 15.) The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. § 416.927(d). A consultative examiner's opinion is subject to the same tests as a treating physician; if the opinion is inconsistent with the record or the physician's notes, the ALJ may give it less weight. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (evaluating consultative examiner's opinion in light of contemporaneous examination by another doctor). Because a consultative examiner sees a patient on one occasion rather than on an ongoing basis, the opinions derived from such an examination are "not entitled to great weight." *Id.*

The ALJ accorded proper weight to Dr. Blanton's evaluation. Because he only saw the plaintiff one time, the ALJ accorded the evaluation less weight than he accorded other medical evaluations in the record. (Tr. at 15.) The ALJ stated that Dr. Blanton's "opinion is inherently less reliable than the claimant's treating physicians, who[] have noticeably not provided opinions regarding the claimant's ability to work." (*Id.*) Furthermore, the ALJ noted external and internal inconsistencies. (*Id.*) Externally, the evaluation was deemed inconsistent with evidence that the plaintiff's depression is controlled if and when the plaintiff takes medication. (*Id.*) This conclusion is supported by various records, including an October 5, 2009, Patient Progress Report reflecting significant improvement in the plaintiff's depression as a result of using Cymbalta. (*Id.* at 710–11.) Internally, the evaluation was deemed inconsistent because Dr. Blanton gave Plaintiff a GAF of 50, indicating moderate symptoms, despite otherwise rating her as having serious limitations. (*Id.* at 15.) In fact, Dr. Blanton did conclude that the plaintiff had "marked limitations that seriously interfere" with the plaintiff's ability to work despite a listed GAF of 50, and this result is inconsistent. (*Id.* at 845.) Because the evaluation is from a non-treating, consultative examiner and because the evaluation is internally and externally inconsistent, the ALJ had good cause to assign little weight to the psychologist's evaluation.

IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Ledbetter's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 25th day of July 2012.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458